IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. 08-0225-KD |
| v. | ) | |
| | ) | CIVIL ACTION NO. 10-0620-KD-N |
| BURGESS LEE BURGESS, | ) | |
| | ) | |
| Defendant/Petitioner. | ) | |

REPORT AND RECOMMENDATION

This matter is before the court on petitioner's Motion to Vacate, Set Aside or Correct

Sentence (doc. 142), as well as the government's Response (doc. 148) and the petitioner's Reply

(doc. 152).  This motion was referred to the undersigned pursuant to 28 U.S.C. § 636 and Local

Rule 72.1(c) for preparation of a Report and Recommendation.

Having previously determined (doc. 161) that a hearing was needed on plaintiff's claim

that his attorney failed to file a notice of appeal despite being requested to do so, the undersigned

held an evidentiary hearing on February 29, 2012.  Defendant was present at the hearing,

represented by attorney Richard Williams, Esq.; Assistant United States Attorney Christopher

Brinson appeared on behalf of the government.  The court heard testimony from defendant and

his former counsel, Donald Brutkiewicz, Jr., Esq.

Procedural Background

Petitioner, Burgess Lee Burgess, was indicted in a four-count indictment (doc. 1), along

with co-defendant Mitchell Kent Jackson.  The first three counts charge Burgess with knowingly

travelling in interstate and foreign commerce for the purpose of engaging in illicit sexual conduct

with another person on three different occasions.  Count Four charges that Burgess and Jackson

1

willfully, knowingly, and unlawfully conspired to travel in interstate and foreign commerce for the purpose of engaging in illicit sexual conduct with another person.

Burgess pleaded guilty on November 13, 2008, to counts three and four, pursuant to a written plea agreement. The statutory maximum sentence on each count was fifteen years, plus a term of supervised release and a special assessment of $100. In the written plea agreement, the government bound itself to request a sentence at the low end of the applicable guideline range and, if Burgess provided substantial assistance, the government agreed to request a sentence reduction pursuant to U.S.S.G. § 5k1.1. The plea agreement contained an appeal waiver provision.[1] It also provided for registration as a sex offender in any jurisdiction where Burgess resides, is employed or is enrolled in school.

At sentencing, on November 6, 2009, the court rejected the government's 5k1.1 request. The court determined that the defendant's base offense level was 28, with no criminal history points, which resulted in a guidelines calculation of 78 to 97 months imprisonment. The court imposed a sentence of 78 months imprisonment, to be followed by three years of supervised release, plus a $100 special assessment on each count. The supervised release term included conditions that Burgess register as a sex offender, not possess or use any computer with access to

---

[1] The appeal waiver applied to an appeal of the sentence imposed. It also expressly waived defendant's right to challenge, in a collateral attack, the sentence imposed or the manner in which the sentence was determined, with the following exceptions:

a. Any punishment imposed in excess of the statutory maximum;

b. Any punishment that constitutes an upward departure from the guideline range: or

c. A claim of ineffective assistance of counsel.

Doc. 84 at 10-11.

any online computer service, submit to periodic examination of his computers, and submit to mental health and sex offender treatment.  Burgess did not file a direct appeal.[2]  The government acknowledges that the instant petition was timely filed.

Petitioner makes the following arguments in support of habeas relief:

1) Ineffective assistance of counsel before and during plea;
2) The plea was not knowingly and voluntarily entered;
3) Ineffective assistance of counsel at sentencing and on appeal;
4) The Court abused its discretion by not granting a sentence reduction and by not following the 18 U.S.C. § 3553(a) factors in calculating sentence.

Legal Standard

*Habeas*

Habeas relief is an extraordinary remedy which "may not do service for a [ ] [direct] appeal." U.S. v. Frady, 456 U.S. 152, 165 (1982). A defendant who has exhausted his right to appeal is presumed to stand "fairly and finally convicted." Id. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. U.S. v. Addonizio, 442 U.S. 178, 185 (1979). Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. . . . A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings. The appellate process does not permit reruns." Moore v. U.S., 598 F.2d 439, 441 (5th Cir. 1979).

In general, claims not raised on direct appeal may not be considered on collateral attack. A petitioner can, however, overcome his procedural default of claims not raised on direct appeal. The burden a petitioner must meet differs, depending upon the type of claim he raises. First,

---

[2] He also did not file a notice of non-appeal.

3

"nonconstitutional claims can be raised on collateral review only when the alleged error constitutes a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." Burke v. U.S., 152 F.3d 1329, 1331 (11th Cir. 1998) (citations and internal quotations omitted). A petitioner's burden with regard to constitutional claims not presented on direct appeal is slightly less stringent. Constitutional claims may be considered if the petitioner can "show cause excusing his failure to raise the issues previously and actual prejudice resulting from the errors." Cross v. U.S., 893 F.2d 1287, 1289 (11th Cir. 1990). Jurisdictional issues, however, are not subject to procedural default because federal courts are of limited jurisdiction and the parties cannot by waiver or default confer a jurisdictional foundation that is otherwise lacking. Harris v. U.S., 149 F.3d 1304, 1306 (11th Cir. 1998).

*Ineffective Assistance of Counsel*

In order to succeed on a claim of ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance was deficient; and (2) that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668 (1984).

> Strickland does not guarantee perfect representation, only a " 'reasonably competent attorney.' " 466 U.S. at 687, 104 S.Ct. 2052 (*quoting* McMann v. Richardson, 397 U.S. 759, 770, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)); *see also* [Yarborough v. Gentry, 540 U.S. 1, 7 (2003)]. Representation is constitutionally ineffective only if it "so undermined the proper functioning of the adversarial process" that the defendant was denied a fair trial. Strickland, *supra*, at 686, 104 S.Ct. 2052. Just as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities.

Harrington v. Richter, --- U.S., ----, 131 S.Ct. 770, 791 (2011).

Under the performance prong, the relevant inquiry is whether counsel's representation

4

was "objectively reasonable." <u>Crawford v. Head</u>, 311 F.3d 1288, 1311 (11th Cir. 2002). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Strickland</u>, 466 U.S. at 690. A petitioner can rebut this presumption only by proving his attorney's representation was unreasonable under prevailing professional norms. <u>Chandler v. U.S.</u>, 218 F.3d 1305, 1314 n. 15 (11th Cir. 2000) (<i>en banc</i>). "Therefore, where the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment." <u>Id</u>. (quotations and citation omitted). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support limitations on investigation." <u>Strickland</u>, 466 U.S. at 690-91.

The petitioner's burden of demonstrating prejudice is high. Under the prejudice prong, it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.  Instead, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.  <u>Wellington</u>, 314 F.3d at 1260 (quotations and citations omitted).

In <u>Hill v. Lockhart</u>, 474 U.S. 52, 58 (1985), the Supreme Court held that the <u>Strickland</u> test applies to advice given by counsel in the context of guilty plea discussions.  "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have

insisted on going to trial." Id. at 59.  In the context of a claim of ineffective assistance of counsel as it relates to the entry of a guilty plea, the Eleventh Circuit has stated:

> In these cases, the prejudice requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. Hill, 106 S.Ct. at 370. If the movant (1) failed to allege in his motion to vacate that, but for counsel's advice, he would not have pled as he did or (2) otherwise failed to show special circumstances indicating that counsel's advice affected his decision to plead, then his allegation of prejudice is insufficient to satisfy Strickland. Id. at 371.

Davis v. U.S., 335 Fed.Appx. 825 (11th Cir. 2009).

"There is a strong presumption that [a defendant's] statements made during the plea colloquy are true." United States v. Medlock, 12 F.3d 185, 187 (11th Cir.), cert. denied, 513 U.S. 864 (1994); United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988) (defendant bears a "heavy burden" to show that his statements under oath were false). "[T]he representations of the defendant as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceeding." Thompson v. Wainwright, 787 F.2d 1447, 1460 (11th Cir. 1986).

*Evidentiary Hearing*

"Unless the motion [under Section 2255 ] and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. However, an evidentiary hearing is not required in every case.  For example, no evidentiary hearing is required:

Where the petitioner's claim is "patently frivolous," Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989);

Where the claim is based upon unsupported generalizations, id.;

Where the petitioner "has not allege[d] facts that, if true, would entitle him to relief,"

Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002);

Where the "facts alleged are not reasonably specific [and] nonconclusory," id. at 714-15;

"[W]here the petitioner's allegations are affirmatively contradicted by the record," id. at

715;

Where the petitioner's version of the facts has already been accepted as true, Turner v.

Crosby, 339 F.3d 1247, 1274-75 (11th Cir. 2003); and

Where "the district court can determine the merits of the ineffectiveness claim based on

the existing record." Schultz v. Wainwright, 701 F.2d 900, 901 (11th Cir. 1983).

<u>Factual Resume</u>

The following facts are drawn from the factual resume incorporated by reference into the

written plea agreement and read aloud at the guilty plea hearing.  Burgess testified under oath

that the government could prove each of these facts.

> From approximately 1999 to 2001, Mitchell Kent Jackson and Burgess Lee
> Burgess operated and supplied content for a website entitled "Boyhood Paradise."
> The content of the web site operated by Jackson and Burgess depicted nude male
> minor children.

> In or about April 2000, Jackson, with Burgess and Wayne Nelson Corliss,
> traveled to Thailand. In preparation of their travel to Thailand in 2000, Corliss
> had been corresponding via the Internet with a man by the name of John
> Wrenshall who lived in Thailand.  Wrenshall, Jackson, Burgess, and Corliss had
> known each other for many years through "Boy Love and Chat," an Internet chat
> room dedicated to men with a sexual interest in minor boys. In or about January
> 2000, Wrenshall invited Jackson, Burgess, and Corliss to visit him in Thailand to
> engage in sexual acts with minor Thai boys.  Wrenshall explained that if they
> each sponsored a boy – that is, paid Wrenshall money – they each could
> essentially have unfettered access to the boys during the visit to Thailand.
> Wrenshall quoted a price of $200 for first-time oral sex with boys and $20
> thereafter. Wrenshall also quoted a price of $400 to sponsor a boy. Jackson and

7

Burgess, in the Southern District of Alabama, and Corliss, in New Jersey, had multiple conversations via the Internet and telephone from late 1999 through the spring of 2000 to plan the 2000 trip to Thailand.  Ultimately, in or about April 2000, Jackson, Burgess, and Corliss knowingly traveled together from the United States to Thailand.  Jackson, Burgess, and Corliss traveled from the United States to Thailand with the intent to engage in sexual acts with minor Thai boys to be provided by Wrenshall. Jackson, Burgess, and Corliss sponsored minor Thai boys. Jackson, Burgess, and Corliss paid Wrenshall money to engage in sexual acts with minor Thai boys.

In or about April 2001, Burgess and Corliss knowingly traveled from the United States to Thailand for a second time to visit Wrenshall. Burgess and Corliss traveled from the United States to Thailand with the intent to engage in sexual acts with minor Thai boys to be provided by Wrenshall. While in Thailand in April 2001, Burgess and Corliss paid money to Wrenshall to engage in oral sex and other sexual acts with minor Thai boys.

In or about April 2002, Jackson, Burgess, and Corliss knowingly traveled from the United States to Thailand for a third time to visit John Wrenshall. Jackson, Burgess, and Corliss traveled from the United States to Thailand with the intent to engage in sexual acts with minor Thai boys to be provided by Wrenshall. Jackson, Burgess, and Corliss paid money to Wrenshall to engage in and did engage in oral sex and other sexual acts with minor Thai boys.  Jackson and Burgess photographed nude Thai boys. Corliss photographed and videotaped the sexual acts he engaged in with minor Thai boys.

From 2000 through 2002, Wrenshall himself engaged in sexual acts with minor Thai boys in Thailand.

In 2000, 2001, and 2002, Jackson and Burgess paid some portion of Corliss' travel expenses to Thailand and sponsorship fees to sexually abuse minor Thai boys.

The minor Thai boys sexually abused by Jackson, Burgess, Corliss, and Wrenshall are real children who were under the age of 18 at the time of the sexual abuse.

Doc. 86 at 15-17.

## Analysis

### Claims 1&2—The Plea

Petitioner argues that his attorney was constitutionally ineffective in relation to

petitioner's plea of guilty in several particulars.  In its Response, citing Hill v. Lockhart, 474 U.S. 52 (1985), the government explained that petitioner's habeas claim for ineffective assistance of counsel related to the plea was due to be dismissed on the basis that petitioner had not alleged that, but for the alleged deficiencies, he would not have pled guilty.  In Lockhart, the Supreme Court stated that "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Id. at 59.  Despite a section of the government's brief dedicated to petitioner's failure to include such an assertion, petitioner's Reply brief includes no attempt to satisfy this requirement.  Rather, he simply complains about details and suggests instead that "the best resolution of the issues of ineffective representation and Court error in sentencing would simply be resentencing based on current facts available to the Court."  Doc. 152 at 8.  Petitioner has failed to demonstrate prejudice from the allegedly unprofessional errors he claims his attorney made in explaining the plea to him.

Petitioner also alleges that his plea was not knowingly and voluntarily made or, as restated in his Reply, that there were appealable issues.   Specifically, petitioner complains that his attorney told him that the government had agreed to request a 50% sentence reduction but at sentencing only sought a 10% reduction.  Even if that assertion is true, petitioner does not seek to withdraw his plea but rather wishes to obtain a lower sentence.  Had the government requested a full 50% reduction, or if petitioner's attorney had timely raised their failure to do so, there is no reason to believe that the sentencing judge would have accepted a 50% reduction more readily than she did the 10% reduction actually requested and rejected by the court.

Rule 11 is intended to protect a defendant's rights by ensuring that (1) his guilty plea is

free from coercion, (2) he understands the nature of the charges against him, and (3) he knows

the possible direct consequences of his\r guilty plea. United States v. Zickert, 955 F.2d 665, 668

(11th Cir. 1992); U.S. v. Speight, 454 Fed.Appx. 785 (11th Cir. 2011) (defendant failed to show

that she would not have pled guilty but for ineffective counsel; plea colloquy included her

statements that she understood penalties she faced).  The court conducted a Rule 11 colloquy and

defendant acknowledged that he understood the potential sentence he might be given.  Doc. 147

at 4-7.   Defendant has not even claimed, let alone proved, that he would not have pleaded guilty

if he had known more about the potential sentence.  Defendant thus fails to satisfy the Strickland

prejudice prong.

Ineffective Assistance of Counsel at Sentencing and on Appeal

      Burgess argues that his attorney was ineffective because he failed to call character

witnesses and offer mitigating evidence at sentencing.  As noted in the government's Response

(doc. 148 at 22-23), this assertion is undermined by the record.  At sentencing, counsel indicated

on the record that he had several such witnesses in attendance but decided not to call them

because their testimony would be redundant with the letters he had already submitted into

evidence.  Doc. 146 at 59-60.  Whether or not petitioner now disagrees with that decision, it

represents a reasonable decision by competent counsel.

      Petitioner argues that his attorney was ineffective at sentencing because he failed to

object to the government's motion for "only" a ten percent reduction in sentence rather than the

fifty percent reduction that plaintiff claims he was promised.  As noted above, defendant has

failed to demonstrate prejudice; the sentencing judge rejected the ten percent reduction and there

is no reason to believe that a larger proposed reduction would have met a different fate nor that

the objection of his counsel—had counsel shared petitioner's understanding of the government's commitment—would have altered the judge's sentence.

The petitioner's next argument is based on his belief that the sentencing judge rejected the sentence reduction portion of the plea agreement, in part, because of an allegedly incorrect belief in a high incidence of recidivism among pedophiles; petitioner couches his challenge in terms that his attorney was ineffective for not objecting to the judge's comments at that time and offering evidence to the contrary.  This argument fails to satisfy either the performance or prejudice prong of the Strickland standard.

First, petitioner fails to demonstrate that the judge's comment was subject to a valid objection or that constitutionally adequate counsel necessarily would have made such an objection.  Second, petitioner fails to show that such an objection and a thorough citation to scientific articles would have altered either the court's opinion or the sentence imposed.  At Burgess' sentencing, the district judge stated that she would adopt what she had said in relation to his co-defendant concerning the seriousness of the crime, as well as the need for deterrence and for punishment; she further stated that the guidelines ought to be higher to accomplish those objectives.  Doc. 146 at 62-63.  The judge then went on to state that "as far as recidivism, I know there is a high rate of recidivism among individuals that commit these types of crimes.  I just hope he stays with the mental health treatment that I am going to order in this case and hopefully that will be a protection for the public."  Id.  The judge then addressed the government's motion for downward departure.  She stated that she was taking petitioner's cooperation into account in sentencing him at the low end of the applicable guidelines range but would deny the downward departure.  Id.

11

Petitioner focuses solely on the judge's statement concerning recidivism, ignoring the other stated bases for her decision.  That tactic does not convince the court of the existence of prejudice in this case: petitioner has not shown that, but for the judge's views on the likelihood of recidivism in cases of child sexual abuse, he would have received a lower sentence.  Nor does petitioner show that, had his attorney made a contemporaneous objection and made a detailed presentation of the studies concerning recidivism in such cases,[3] the information would have proved that the judge's comments were inaccurate[4] or that the plaintiff was entitled to a lower sentence than he received.  In addition, counsel is not deemed to perform inadequately by failing to raise a novel argument, let alone an issue for which there is binding precedent to the contrary. *See* Engle v. Isaac, 456 U.S. 107, 133–34 (1982) (existence of tools to construct constitutional claim—and thus lack of novelty sufficient to constitute cause for procedural default—does not mean every astute, much less competent, counsel would have raised the claim); Sills v. U.S., 395 Fed.Appx. 570, 573-74 (11th Cir. 2010)(in light of binding precedent to the contrary, failure to

---

[3] The petitioner's idea that constitutionally adequate counsel is required to be prepared at all times to counter every passing remark which a judge may make is not only not based in common sense but is not supported by case law.  "Just as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." Harrington v. Richter, ---U.S., ----, 131 S.Ct. 770, 791 (2011).

[4] It should also be noted that petitioner's basic assumption appears to be false, as well: the lower-than-expected rates of recidivism which plaintiff's proffered research indicates for certain classes of sex offenders do not, according to the same research, appear to be applicable to perpetrators such as this petitioner.  Increased rates of recidivism are noted for perpetrators whose victims were strangers, or were male or unrelated to the perpetrator; and perpetrators who had deviant sexual interests or a sexual interest in children, *see* Jami Krueger, New York State Division of Probation and Correctional Alternatives, Research Bulletin: Sex Offender Populations, Recidivism and Actuarial Assessment, National Institute of Corrections website: NICIC.gov/Library/022709 (2007); as well as those who have a stable, long-term deviant sexual preferences, and those who target male child victims, *see* Recidivism of Sex Offenders, Dr. Karen Gelb, Senior Criminologist for Sentencing Advisory Council (2007), scribd.com/doc/23707734/Recidivism-Sex-Offenders-Research-Paper.

raise argument did not constitute ineffective assistance of counsel). The Eleventh Circuit has repeatedly referred to the heightened recidivism rates for child sexual abusers. *See* U.S. v. Turner, 626 F.3d 566, 573 (11th Cir. 2010)(citing high recidivism rates for child sexual abusers); U.S. v. Irey, 612 F.3d 1160, 1212-13 (11th Cir. 2010) (despite expert opinion on defendant's "medium low to medium or moderate risk" of recidivism, and defendant's advanced age when he would be released from prison, possibility of re-offending was valid concern; *see also* cases cited in opinion). The government points out that, in passing the Sexual Offenders Registration and Notification Act ("SORNA"), Congress has found that recidivism was high among sex offenders. Nothing in the instant motion demonstrates that constitutionally adequate counsel necessarily would have challenged that portion of the judge's explanation for the sentence imposed.

Defendant also argues that, because his co-defendant received the same sentence, his attorney must not have tried hard enough to inform the court of the alleged fact that defendant Burgess "abandoned the conspiracy and ceased objectionable activity before the co-defendant did." The party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in light of ... [the] record and the factors in section 3553(a)." United States v. Docampo, 573 F.3d 1091, 1103 (11th Cir. 2009) (*quoting* United States v. Talley, 431 F.3d 784, 788 (11th Cir.2005)). Petitioner fails to offer evidence for this claim.[5] Nor does he offer evidence of when his co-defendant abandoned the conspiracy, or when Burgess learned of that fact, or when his attorney knew or should have known of both facts so as to have been in a

---

[5] The court is not certain how defendant Burgess can claim to have "abandoned" the conspiracy where the object of the conspiracy—the trips to Thailand for the purpose of sex with minors which occurred through 2002—had already been completed. If he had evidence that the other defendants continued in his absence to act in furtherance of the conspiracy after that date, such evidence is not before the court.

position to have made such a comparison between the defendants at the sentencing hearing. Further, the as addressed at the hearing, the co-defendant's youth was a valid consideration.  If an explanation for the non-disparate sentences were needed, the relative ages of these two men more than counterbalances the petitioner's purported earlier abandonment of the conspiracy.

With regard to the issue of ineffective assistance of counsel on appeal, defendant states that he asked his attorney to file an appeal but his attorney failed to do so.  The court appointed counsel for the petitioner and held an evidentiary hearing on this issue.  Attorney Brutkiewicz testified that he did not recall what conversation he had with defendant following the sentencing but that it had been his practice for over 20 years to keep a pocket recorder with him and—if he had been asked to file an appeal—he would have pulled it out and made a short entry to his secretary to file a notice of appeal.  Defendant testified that he spoke to Attorney Brutkiewicz in the elevator immediately following the sentencing hearing and told him simply "appeal it" but that he did not follow up on it in a phone call a week later or at any other time. Attorney Brutkiewicz testified that he did not recall such a conversation but that if it had happened he would have informed defendant that there were no valid grounds available for appeal.

It should be noted that defendant pled guilty and that the plea agreement (doc. 86) he executed contained a waiver of his right to appeal or collaterally attack his conviction and sentence except on strictly limited grounds: "a. Any punishment imposed in excess of the statutory maximum; b. Any punishment that constitutes an upward departure from the guideline range; c. A claim of ineffective assistance of counsel."  As discussed above, neither of the first two exceptions is applicable to this case, as defendant does not base his claim of ineffective assistance during the appeal phase on counsel's failure to raise the issue of counsel's own

ineffectiveness in a direct appeal.  As to the third matter, ineffective assistance of counsel claims are generally not raised on direct appeal but rather by collateral attack, such as the instant habeas petition.  *See e.g.* Massaro v. United States, 538 U.S. 500, 508 (2003).  In light of the court's review of the ineffective assistance of counsel claims, the court finds no valid claim which could have been raised on direct appeal.  Thus, the court finds that there were no valid bases for an appeal available to defendant.[6]

On the basis of the testimony presented at the hearing and the record in this action, the undersigned finds that defendant's claim to have made a request to his attorney that he file an appeal is not credible.  The court thus finds no merit to defendant's claim of ineffective assistance of appellate counsel based on the failure to file an appeal when requested to do so.

Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). Where, as here, a habeas petition is being denied, in part, on procedural grounds without reaching the merits of an underlying

---

[6] This fact would not excuse a failure to file an appeal if requested, but rather goes to the likelihood that defendant would have requested an appeal and the probable advice counsel would have given.

constitutional claim, "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling[,]" Slack v. McDaniel, 529 U.S. 473, 484 (2000), and, in part, on the merits of an underlying constitutional claim, a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[,]" id. *See also* id. at 483-484 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under Barefoot, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were '"adequate to deserve encouragement to proceed further."'"); *see* Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'").

Petitioner acknowledges that he simply seeks a lower sentence and does not claim that he would not have pleaded guilty absent the alleged errors of his attorney, and the record reflects that petitioner understood the nature of his plea.  Plaintiff has failed to demonstrate that his attorney was ineffective in connection with the plea or at sentencing.  After a full evidentiary hearing the undersigned determined that there was no factual basis for a claim that counsel failed to file an appeal when requested.  Reasonable jurists could not debate whether Burgess's § 2255 motion to vacate should be resolved in a different manner or that the issue(s) presented are

adequate to deserve encouragement to proceed further.

<u>Conclusion</u>

As set forth above, it is hereby RECOMMENDED that the court find no merit to petitioner's claims and that the Motion to Vacate, Set Aside or Correct Sentence be DENIED.  It is further RECOMMENDED that the court find no basis for a certificate of appealability.

*See* Magistrate Judge's Explanation of Procedural Rights, attached, for important information on how to proceed.

DONE this the 23rd day of April, 2012.

/s/  Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1. **Objection**. Any party who objects to this recommendation or anything in it must, within **fourteen (14) days** of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten [now fourteen] days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

(Emphasis added)  A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

/s/   Katherine P. Nelson